UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LORETTA MERCADO

V.                                           D.N. 21 cv 1219 (___)

BASS PRO OUTDOOR WORLD, LLC          SEPTEMBER 13, 2021

## COMPLAINT

### I. Parties

1. The Plaintiff, Loretta Mercado is a resident of Norwalk, Connecticut. She is a member of a protected class in that as she is Female, Hispanic, Brown and Homosexual/Lesbian.

2. The Defendant is Bass Pro Outdoor World, LLC ("Bass Pro"). Bass Pro has a retail outlet in Bridgeport, Connecticut and its headquarters is located in Springfield, Missouri. Bass Pro employs in excess of 250 employees. Bass Pro is a limited liability company governed under the laws of the State of Connecticut.

### II. Jurisdiction, Venue and Equitable Relief

3. This action against Bass Pro arises under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000e and the Civil Rights Act of 1991 ("Title VII"). It also arises under Connecticut General Statutes Sections 46a-60(a)(1). This Honorable Court has

jurisdiction over this action pursuant to 42 U.S.C. Section 2000e-5(f). Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g) and the Civil Rights Act.

4. The Plaintiff has exhausted the administrative remedies made available to her by filing her claims with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") Case Number 2120 236 and the Equal Employment Opportunities Commission ("EEOC") Case Number 16A 2021 00436 and then requesting a release of jurisdiction which she received from the CCHRO on July 22, 2021 (attached). The CCHRO had made a probable cause finding regarding discrimination as against the Defendant.

5. Venue is proper in this District and Division pursuant to 42 U.S.C. Section 2000e-5(f)(3) because a substantial part of the events giving rise to Plaintiff's claim arose here and one or more of the breaches of which Plaintiff complains occurred here.

**III. Statement of Facts**:

6. The Plaintiff became employed full time with the Respondent, Bass Pro Shops, Inc. ("Bass Pro") on April 6, 2015. She was hired by Walter Grammer (Regional Manager, North East) as General Manager for Bass Pro Shops, Inc. for the store located in Bridgeport, Connecticut.

7. The Plaintiff was hired to oversee all of the opening procedures for the new store in Bridgeport. Her duties included hiring, overseeing construction, merchandising, permitting and community relations which included television and radio advertising.

8. The Plaintiff was hired because of my Hispanic heritage and her retail qualifications including working as a District Manager for Sears for 7 years and as a Regional Operations Manager for Best Buy for 5 years. Before that she was with Walmart and Home Depot in management positions.

9. For the duration of her employment as manager of the Bridgeport location her store exceeded all corporate expectations for the financial success of the store.

10. In 2018, while working as General Manager of the Bridgeport store, the Plaintiff had to deal with a Caucasian employee that was a major disciplinary problem. The employee's name was Deborah Del Torro. She was "Club Manager" for the store. In that position her responsibilities included sell store credit cards. Deborah was very abrasive and aggressive toward other employees and customers. At a certain point the Plaintiff began to discipline her because of her inappropriate behavior towards others.

11. Deborah complained to Human Resources that the Plaintiff was disciplining her and Marcie Bernard at the time Regional Human Resources and Bonnie Sousa (District Human Resources Manager) and Walther Grammer (Regional Manager) became involved in discipling the Plaintiff.

12. The Plaintiff was astounded that all of those individuals were discipling me because she was completely within my rights as a store manager to discipline Deborah who was out of control.

13. At that point, the Plaintiff refused to sign paperwork claiming that she was at fault and paperwork that claimed she needed to apologize to Deborah. When the Plaintiff refused to sign, she was threatened with termination by Walter Grammer and Marcie Bernard.

14. At that point, the Plaintiff sought legal counsel and eventually resolved the situation. In fact, it was determined that Deborah was a disciplinary issue and Deborah was later terminated because of her inappropriate behavior.

15. 2019 was a great year for the Bridgeport location. The store exceeded profitability expectations. The Plaintiff was rated as "exceeds expectations" financially for the year. The Plaintiff was also rated "exceeds expectations" in regard to customer service.

16. In 2020, the store was number one in the region in sales at 35% over 2019 despite COVID. In 2020, the store made $2.8 million in profit and all expenses including payroll were lower than the previous year. The Bridgeport store was the best store in sales on the East Coast.

17. Over the Plaintiff's five plus years as Bridgeport Store Manager, she had been requested and had participated in national advertising for Bass Pro including appearing on Inside Edition, She had been interviewed for Associated Press, She had appeared on Fox and Friends

Morning Edition several times and had completed interviews with the Wall Street Journal, Connecticut Post and local Connecticut television.

18. In November, 2020, the Plaintiff was asked by Danny Vincent to visit another store to prep it for black Friday because of her success in Bridgeport.

19. On January 9, 2021, the Plaintiff was working in the Bridgeport store where she was approached by Patricia Younger who was letting her know that a customer was having trouble finding his receipt.  The Plaintiff approached the gentleman and explained to him that he needed his receipt to pick a trolling motor up from Customer Service.

20. The customer explained to the Plaintiff that he was parked in curb side pick up and he told the Plaintiff he could retrieve the receipt from his car.  The Plaintiff told him that was not a problem and the Plaintiff brought the trolling motor back inside.  The Plaintiff then went outside to see where the customer was parked so she could help him load the trolling motor.

21. At that point he walked away from curb side pick up and the Plaintiff became concerned and stopped what she was doing.  The customer then, got into the passenger side of his Mercedes and the Plaintiff proceeded to waive at him thinking he was going to see her but he drove away.  At that point, the Plaintiff realized something was wrong and took his license plate number down in the notes section of her phone.

22. The Plaintiff then went back inside the store and called Evelyn Sanchez in Operations Support and told her that she would be up in a minute to review the cameras. When the Plaintiff went upstairs Evelyn was there with Tyrese Pelzer, also in Operations Support. They asked the Plaintiff if they should call the police and she said no. The Plaintiff said, we need to review the cameras to see exactly what happened.

23. The Plaintiff never thought this particular customer was a "shop lifter". She merely went outside to see where he was parked at curb side pick up.

24. Evelyn and Tyrese eventually determined that this customer did not pay for the trolling motor. Evelyn called Bridgeport Police an hour and one half later to get their opinion on how the proceed. The Police said there was nothing they could do because the customer did not leave with the merchandise.

25. At that point, later on January 9, 2021, Evelyn Sanchez wrote a recap of the incident and sent it to the management team. The Plaintiff then forwarded Evelyn's email to Danny Vincent, Regional Manager and Eric Welch, Regional Operations Support Manager as recognition of a job well done by Patricia Younger.

26. On January 10, 2021, Eric Welch, Regional Operation Support Manager, asked the Plaintiff for the camera numbers so he could remotely access the cameras that filmed the incident. The Plaintiff was surprised to hear that he wanted the camera information because she was

expecting that he would be recognizing the team for the great job of saving the store money by avoiding a loss.

27. On January 11, 2021, the Plaintiff was called by Diane Hail, Regional Human Resources Manager, and she conferenced in Danny Vincent, Regional Manager. Danny said that he had gotten some notes that were "concerning" about the January 9th incident from Eric Welch, Regional Manager of Operations Support. During the conversation, Danny and Diane kept referring to the customer as a "shop lifter" and they asked the Plaintiff to walk them through the incident on the 9th.

28. The Plaintiff explained to Danny and Diane that the customer was not a "shop lifter" and she explained what happened. The Plaintiff explained that Patricia Younger, Front End Team Lead, had brought to her attention a customer who was supposedly having trouble finding his receipt. The Plaintiff walked up to the customer and asked him for his receipt. He said it was in his car. The Plaintiff explained that we could not release the trolling motor until we had the pick up receipt. He stated he was parked at curb side pick up and he would get the receipt. The Plaintiff said, "fine, get your receipt" and I will bring the unit back inside" (the vestibule), The Plaintiff then brought the motor in and proceed to walk outside to see where the customer was parked at curb side pick up. The Plaintiff noticed that the customer was

walking in a different direction and she stopped. The Plaintiff waived at the customer to show him she was there and then he drove away in his Mercedes.

29. At the end of the conversation, Danny said "Diane, are you ok with Loretta's statement" and Diane said "yes". Danny said "ok, great catch" and "nice job" and then he changed the subject to "How are sales?" and the Plaintiff said: "Sales are great, we are up for the month again". He said "Wonderful" and that was the end of the conversation. The Plaintiff found out later, that the notes from Eric implied that the Plaintiff was chasing a shop lifter.

30. On Thursday, January 14, 2021, the Plaintiff received a call from Eric Welch asking for "additional information" as to the incident. The Plaintiff thought that was an unusual request because he had never done anything like that before. He asked for film and statements. He normally just requested an incident report.

31. On Friday, January 15, 2021, the Plaintiff sent him the requested information.

32. On Monday, January 18, 2021 at 8:30 a.m., Danny Vincent and Diane Hail, Regional Manager, Human Resources, East Coast came into the Bridgeport location and terminated the Plaintiff for "violation of company policy". They claimed the Plaintiff had "chased a shop lifter outside of the store". The Plaintiff told them that "I absolutely did not do that." The Plaintiff told them she was shocked and at that point they asked her for all of my equipment and to clean out her office.

33. At that point, Danny was very aggressive in wanting the Plaintiff to leave the store immediately and he told her she could not go around and say good bye to her employees. The Plaintiff told him that she was concerned because she did not steal and she was not abusive to the employees and he told her no, he just wanted her out of the store.

34. Danny was very aggressive and he was not social distancing when he walked the Plaintiff out of the building, he was very close to her and was physically forcing her out of the building.

35. The Plaintiff was targeted for termination by Marcie Bernard, Director of Human Resources, Retail, who worked through and with Danny Vincent and Diane Hail to terminate her on the basis of her sexual orientation, gender, race, color and age. The given reason of "chasing a shop lifter" was pre-textual (false).

36. Marcie Bernard had made the decision to target the Plaintiff for termination because of her sexual orientation, gender, race, color and age after the Plaintiff challenged her authority in 2018 and would not sign paperwork that said the Plaintiff was at fault in 2018. Marcie has made discriminatory comments and acted in a discriminatory manner in the past. For example, on April 20, 2018 she said to the Plaintiff "all we want you to do, Loretta is be nice to "your people" referring to people of certain races and colors as "your people". She was clearly implying that I discriminated against Caucasian people. As another example, she

visited all the stores on the east coast except mine because of my race, color, and sexual orientation.

37. In February, 2019, the Plaintiff was invited to a party in New York City in which the owner of Bass Pro, John L. Morris was going to be receiving an award. The Plaintiff was asked by an executive of Bass Pro to attend the party. The executive asked the Plaintiff if she could bring her husband and the Plaintiff said "I am not married. I am gay." He said "ok" I will get back with you. He never called the Plaintiff back.

38. During my employment at Bass Pro, the Plaintiff was a loyal employee doing an exemplary job. The Plaintiff had always gone above and beyond in the interest of helping the company succeed. The Plaintiff frequently cancelled vacations and rescheduled family events in order to provide the service that Bass Pro asked her to provide.

39. During her employment at Bass Pro, the Plaintiff asked for personal reasons to relocate to Mesa, Arizona. At the time, there was a job opening in the Mesa store but she was never given the opportunity to relocate despite the fact that males in the company were quite often given the opportunity to relocate.

40. As a General Manager, the Plaintiff was interested in being promoted to a multi unit manager position but these positions were never posted and only given to males. Females were never promoted into these positions.

41. While Plaintiff was a General Manager, she endured physical and emotional harassment by Caucasian male supervisors.  For example, on April 30, 2018, the Plaintiff's Regional Manager, Walter Grammer (Caucasian, male) became angry and hostile because Plaintiff was refusing to sign a final written warning.

42. While Plaintiff was a General Manager, she endured discrimination on the basis of her sexual orientation, age, gender, race and color by Marcie Benard who who worked for the Defendant in Human Resources.   For example, Marcie Benard was present at the April 30, 2018 meeting in which Walter Grammer became hostile and Ms. Benard did nothing to stop the harassment.

43. On January 18, 2021, Bass Pro employee Danny Vincent, in terminating the Plaintiff's employment asked the Plaintiff to leave through the back receiving doors.  The Plaintiff declined his order and Mr. Vincent physically grabbed the Plaintiff and attempted to drag or push her toward the back of the building.  The Plaintiff responded "Danny, get your hands off me.  You are no longer my boss.  I am going to say goodbye to my outfitters and I did nothing wrong".

44.  On July 23, 2021, a BBQ event was organized by Bass Pro employee Jose Santana ("Team Lead") for the Plaintiff at Jose's residence in Bridgeport, Connecticut.  While the BBQ was

taking place, Mr. Santana received a harassing text message from Sean Humphries (Caucasian) who had replaced the Plaintiff as General Manager.

45. For the foregoing reasons, the Plaintiff alleges she was discriminated against on the basis of my sexual orientation, age, gender, race, and color.

**IV. Count One: Violations of Title VII of the Civil Rights Act of 1964 as Amended, 42 U.S.C. Section 2000e et seq.**

46. The Defendant violated the provisions of Title VII of the Civil Rights Act of 1964 as Amended, Section 2000e et seq., because it discriminated against the Plaintiff on account of her gender, race, color and sexual orientation and by permitting a hostile work environment.

**V. Count Two: Violation of Connecticut General Statutes Section 46a-60**:

47. The Defendant violated the provisions of Connecticut General Statutes Section 46a-60 because it discriminated against the Plaintiff on the basis of her gender, race, color and sexual orientation and by permitting a hostile work environment.

12

**VI. Damages/Prayer for Relief**:

48. As a result of the Defendant's unequal treatment and discriminatory treatment of the Plaintiff, the Plaintiff has suffered financially and emotionally. Her career path has been forever altered negatively and she has lost opportunities for promotion and she has suffered emotional distress as a result of the intentional discrimination.

As to all Counts, the Plaintiff prays for the following:

a. Compensatory Damages;

b. Emotional Distress Damages;

c. Economic Damages;

d. Equitable Damages;

e. Attorney's Fees and Costs;

f. Punitive Damages;

g. All Other Damages Available.

THE PLAINTIFF:

By: <u>  /s/ Daniel H. Kryzanski ct 15620</u>
      Daniel H. Kryzanski, Esq.
      Law Offices of Daniel H. Kryzanski
      30 Ferry Blvd. #2
      Stratford, CT 06615
      Phone: (203) 380-1384
      Fax: (203) 380-1598
      Juris #: 408785